UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

JOHN TRISVAN,

                              Plaintiff,                    **MEMORANDUM & ORDER**
                                                           14-CV-6016 (MKB)

                    v.

ANTHONY ANNUCCI, Commissioner of the New
York State Division of Parole, LETRICIA
MCCLEARY, Senior Parole Officer for Brooklyn
V Area Office, ANNE GOULD, YVONNE KING,
VIKKY URENA, and A. GAYNOR, Parole
Officers for Brooklyn V Area Office, ANDREA
EVANS, Former Chair of the New York Parole
Board (2009-2013), and TINA STANFORD,
Present Chair of the New York Parole Board (2013-
Present),

                              Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff John Trisvan, proceeding *pro se*, commenced the above-captioned action on

October 14, 2014 against Defendants Anthony Annucci, Acting Commissioner of the New York

State Department of Corrections and Community Supervision ("DOCCS"),[1] Letricia McCleary,

Senior Parole Officer, and Anne Gould and Yvonne King, Parole Officers, of the "Brooklyn V

Area Office," challenging the conditions of his parole and seeking relief pursuant to 42 U.S.C. §

1983. (Compl. 1, Docket Entry No. 1.) Plaintiff subsequently amended the complaint three

times, adding new claims and defendants. (*See* Am. Compl. 1, Docket Entry No. 6; Second Am.

Compl. ("SAC") 2–4, Docket Entry No. 15; (Third Am. Compl. ("TAC") 5, Docket Entry No.

---

[1] Since the commencement of this action, Department of Correctional Services and
Department of Parole have merged to form the new entity DOCCS. (*See* Defs. Mem. in Supp. of
Defs. TAC Mot. ("Defs. TAC Mem.") 1 n.1, Docket Entry No. 64.)

57.)

Defendants move to dismiss the TAC, the last amended complaint, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Plaintiff opposes these motions.[3] The TAC was filed on January 5, 2017, and largely mirrors the prior complaints except for the addition of claims based on the Fifteenth and Twenty-first Amendments and A. Gaynor, Parole Officer, as a Defendant. (*Id.* at 1–2.) For the reasons set forth below, the Court grants Defendants' motions to dismiss. Plaintiff is granted thirty (30) days from the date of this Memorandum and Order to submit a fourth, and final, amended complaint.

## I. Background

### a. Factual background

The Court assumes familiarity with the facts as detailed in its prior Memoranda and Orders and provides a summary of only the pertinent facts. *See Trisvan v. Annucci*, No. 14-CV-6016, 2015 WL 1966275, at *1 (E.D.N.Y. Apr. 29, 2015) ("*Trisvan I*"); *Trisvan v. Annucci*, No. 14-CV-6016, 2016 WL 7335609, at *5 (E.D.N.Y. Dec. 16, 2016) ("*Trisvan II*"). In January 1997, Plaintiff's friend, Jermaine Cross, learned that another man, Raheim Slaughter, intended to

---

[2] (Defs. Mot. to Dismiss TAC ("Defs. TAC Mot."), Docket Entry No. 63; Defs. TAC Mem.; Def. Evans Mot. to Dismiss TAC ("Evans TAC Mot."), Docket Entry No. 75; Def. Evans Mem. in Supp. of Evans TAC Mot. ("Evans TAC Mem."), Docket Entry No. 76.)

As part of the motion to dismiss the TAC, Defendants explained that Evans and Gaynor had not "requested representation . . . and ha[d] not been served" at the time of filing. (Defs. Mem. in Supp. of Defs. TAC Mot. ("Defs. TAC Mem.") 1 n.1, Docket Entry 64.) Evans later requested common representation and Defendants filed a separate motion to dismiss on her behalf. (*See* Evans TAC Mot.) Given the overlap in claims and defenses, the Court addresses both motions to dismiss in this Memorandum and Order.

[3] (Pl. Opp'n to Defs. TAC Mot. ("Pl. TAC Opp'n") Docket Entry No. 62; Pl. Opp'n to Evans TAC Mot. ("Pl. Evans TAC Opp'n"), Docket Entry No. 77.)

rob Plaintiff.[4]  *See Trisvan v. Ercole*, No. 07-CV-4673, 2015 WL 419685, at *2 (E.D.N.Y. Jan.

30, 2015).  Cross discovered that Slaughter was in an apartment in the Albany Housing Complex

in Brooklyn, New York.  *Id.* at *1.  At approximately 1:30 AM, Plaintiff accompanied Cross to

the apartment to confront Slaughter.  *Id.* at *2.  When Plaintiff and Cross arrived at the

apartment, they found Slaughter and shot him several times.  *Id.*  Cross was arrested a few days

later and told the police that Plaintiff was the second shooter.  *Id.*  The police went to Plaintiff's

home, but he had fled to Philadelphia, Pennsylvania.  *Id.*  Plaintiff returned to New York in May

of 1997, and surrendered to the police.  *Id.*  Based on an eyewitness identification and Plaintiff's

confession, Plaintiff was convicted of manslaughter in the first degree.  *Id.* at *3–4.  The trial

judge sentenced Plaintiff to an indeterminate sentence of twelve-to-twenty-five years of

imprisonment.  *Id.* at *4.

Plaintiff was granted parole on September 27, 2011, after serving fourteen years of his

sentence at Great Meadow Correctional Facility.  (TAC 2.)  Gould, Plaintiff's initial parole

supervisor, informed Plaintiff of the conditions of his parole, which included:

> a) curfew between the hours of 9 p.m. and 7 a.m.;
> b) no use of alcohol or [attendance] in an establishment of where alcohol is [the] main level of business;
> c) no fraternizing or being in the company of convicted felons/felony offenders;
> d) no travel outside of New York City (5 boroughs) and/or New York State;
> e) cannot operate a vehicle or have possession of a driver's license;
> f) cannot possess a firearm or sharp instrument that can be used and ruled as a weapon.

---

[4]  Because the TAC does not provide any of the facts underlying Plaintiff's conviction, the Court takes judicial notice of *Trisvan v. Ercole*, No. 07-CV-4673, 2015 WL 419685 (E.D.N.Y. Jan. 30, 2015), a decision in Plaintiff's federal habeas corpus case, which describes the factual background of Plaintiff's crime of conviction.  In the TAC, Plaintiff only asserts that he was "tried, charged, and convicted of manslaughter in the first degree."  (TAC 6, Docket Entry No. 57.)

(*Id.* at 3.)  King subsequently replaced Gould as Plaintiff's parole supervisor, and informed

Plaintiff that he remained subject to the same conditions of release.  (*Id.*)  King also informed

Plaintiff that the release conditions were imposed by Commissioner Annucci, who forwarded

them to King's supervisor, McCleary.  (*Id.* at 4.)  In approximately March 2015, Urena replaced

King as Plaintiff's parole supervisor.  (*Id.*)

In or about March or April 2015, Plaintiff was informed that he needed to submit a

request to travel outside of New York City.  (*Id.*)   In June 2015, Plaintiff requested permission

to travel to Albany, New York, and Urena denied the request.  (*Id.*)  Plaintiff subsequently filed a

complaint to Annucci and Evans.  Gaynor, who replaced Urena, subsequently also denied the

travel request.  (*Id.*)  Although his travel request was eventually granted in August of 2015,

Plaintiff alleges that he has been stripped of his "level three" status in retaliation for his

grievance complaint.  (*Id.*)  As a result of his now "level one" status, Plaintiff must report to his

parole officer every two weeks instead of once every two months. (*Id.*)  Plaintiff also claims that

he has been "forced" by each parole supervisor to agree to the parole terms.  (*Id.*)  At some point,

Plaintiff was also informed that, due to his felony conviction, he no longer has the right to vote.

(*Id.*)

### b.   Procedural background

Based on the foregoing facts, Plaintiff filed suit against Defendants, alleging violations of

his rights under the First, Second, Fifth, Eighth, Ninth and Fourteenth Amendments of the United

States Constitution.  (*Id.* at 5.)  In every complaint, Plaintiff has alleged: (1) that the curfew and

travel conditions violate the First Amendment's Free Exercise Clause because (a) he is

prohibited from praying at a mosque between 9:00 PM and 7:00 AM, and (b) he is prohibited

from making a pilgrimage to Mecca, (*id.* at 3); (2) that the condition regarding contact with

persons previously convicted of a felony violates his First Amendment right to free association because he is unable to associate with anyone unless he knows their criminal history, (*id.*); (3) that the firearm condition violates his Second Amendment right to bear arms, (*id.* at 5); and (4) that the travel restriction violates his fundamental right to travel under the Fourteenth Amendment and restricts his ability to "strengthen[] ties with [his] friends and family, . . . ." (*id.* at 3.)  Through subsequent amendments, Plaintiff also alleged that the release conditions constitute: (5) double punishment for the same crime in violation of the Fifth Amendment's Double Jeopardy Clause, (*id.* at 5); (6) cruel and unusual punishment in violation of the Eight Amendment, (*id.*); and (7) violation of due process and equal protection rights guaranteed under the Fourteenth Amendment, (*id.*).  Although not directly related to the conditions of parole, Plaintiff has also consistently maintained that Defendants have violated his right to vote.  (*Id.* at 4.)

In the April 2015 Memorandum and Order, the Court dismissed Plaintiff's claims *sua sponte* and denied leave to amend, finding that "Plaintiff has no protected liberty interest to be free from the special conditions of his parole and has otherwise failed to allege a constitutional violation." *Trisvan I*, 2015 WL 1966275, at *4 (citations omitted).  The Court also found that Plaintiff failed to "allege[] any facts to suggest that the imposition of his special conditions of parole are arbitrary and capricious or that his parole conditions are not 'reasonably and necessarily related' to the Government's interest." *Id.* (citation omitted).  On appeal, the Second Circuit remanded with instructions to allow Plaintiff to file a second amended complaint to show why the release conditions are not "'reasonably and necessarily related' to the state's interests in light of the conduct for which [Plaintiff] was convicted."  (Order of USCA, Docket Entry No. 14.)

Following remand, in dismissing the Second Amended Complaint, the Court again found that Plaintiff "fail[ed] to present . . . any factual allegations regarding his crime of conviction and fail[ed] to allege that the release conditions are not reasonably and necessarily related to his crime of conviction." *Trisvan II*, 2016 WL 7335609, at *3. The Court reiterated that "parolees are subject to 'restrictions not applicable to other citizens,' and a prisoner on parole enjoys only 'conditional liberty properly dependent on observance of special parole restrictions.'" *Id.* (citations omitted). Thus, Plaintiff's "consistent[] assert[ions] that the release conditions are unconstitutional" were insufficient to withstand the motion to dismiss. *Id.* at 4. Nevertheless, in light of Plaintiff's *pro se* status, the Court granted leave to amend. *Id.* at 5. In so doing, the Court advised Plaintiff to "provide . . . facts underlying his crime of conviction and explain why his release conditions are unreasonable or unnecessary in light of those facts." *Id.* (emphasis added).

Subsequently, Plaintiff filed the TAC, repeating his prior assertions that the release conditions violate multiple constitutional amendments. (TAC 5.) Plaintiff did not provide any facts underlying his crime of conviction or allegations as to why the release conditions were therefore unreasonable or unnecessary. (*See generally* TAC.) Instead, Plaintiff only added allegations that the restriction on alcohol consumption violates his rights under the Twenty-first Amendment. (*Id.*) Plaintiff also specified that his right to vote was infringed in violation of the Fifteenth Amendment. (*Id.*)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord*

*Assoc's, L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a pro se complaint liberally"). Thus, Courts must liberally construe papers submitted by *pro se* litigants "to raise the strongest arguments they suggest." *Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015).

### b. Plaintiff fails to allege that the release conditions are not "reasonably and necessarily" related to legitimate state interests in light of his conviction

Defendants argue that the Court should dismiss the TAC with prejudice for failing to state a claim. (Defs. TAC Mem. 2.) Rather than alleging that the release conditions are not reasonably and necessarily related to legitimate state interests in light of the crime and circumstances related to his conviction, Plaintiff again asserts that the restrictions are inherently

unconstitutional and Defendants have violated the Constitution by enforcing them. (Pl. Opp'n to Evans TAC Mot. ("Pl. Evans TAC Opp'n") 2, Docket Entry No. 77 ("It has been noted that Plaintiff's constitutional rights are not unfettered . . . These rights were deemed by the framers . . . as 'inalienable.'").) Plaintiff continuously asserts in a conclusory manner that Defendants' proffered justifications such as the desire to "deter . . . future criminal acts are" attempts to shield violations of his constitutional rights. (Pl. Opp'n to Defs. TAC Mot. ("Pl. TAC Opp'n") 2, Docket Entry No. 62; Pl. Evans TAC Opp'n 2.) In addition, Plaintiff also argues that he has "served his time," and therefore may not be subject to any further supervision. (TAC 7; *id.* at 9 ("Defendants are attempting to keep Plaintiff under supervision for an additional time beyond which Plaintiff has already served.").) Plaintiff further asserts that the restrictions are unnecessary because he has been a "law abiding member of his community" both before and after the conviction at issue. (*Id.* at 9.)

As this Court has reminded Plaintiff, parolees may be subject to "restrictions not applicable to other citizens." *Trisvan II*, 2016 WL 7335609, at *3 (citation omitted). Despite Plaintiff's contrary assertions, even *fundamental constitutional* rights may be abridged to serve reasonable and necessary penological interests. Courts, in the context of parolees, have expressly allowed limitations of the very constitutional rights on which Plaintiff bases his claims. *See Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972) (upholding parole condition placing limitations on the fundamental right of freedom of association protected by the First Amendment); *Daniels v. Ralph*, No. 10-CV-884, 2012 WL 2120591, at *9 (W.D.N.Y. June 11, 2012) (upholding parole condition placing limitations on constitutional protections of familial relationships grounded in the Fourteenth Amendment's right to privacy); *Robinson v. New York*, No. 09-CV-0455, 2010 WL 11507493, at *4 (N.D.N.Y. Mar. 26, 2010) (finding that the

imposition of parole conditions "do[] not implicate the Double Jeopardy Clause because they are not additional to but rather are part of the original sentence"); *id.* at *5 (finding "drug testing, a curfew, . . . home visits, surrender [of] driver's license," and other common parole conditions did not constitute "sufficiently grave [deprivations] to form the basis of an Eight Amendment violation" (citation omitted)); *Watson v. Cieslak*, No. 09-CV-2073, 2010 WL 93163, at *5 (S.D.N.Y. Jan. 11, 2010) (finding denial of travel pass did not violate parolee's constitutional rights); *Rizzo v. Terenzi*, 619 F. Supp. 1186, 1189 (E.D.N.Y. 1985) (holding that an "individual's [constitutionally protected] right to travel, extinguished by conviction and subsequent imprisonment, is not revived upon parole"). Further, statutes *eliminating* the right of felons to bear arms or vote have been upheld as constitutional.[5] *See New York State Rifle & Pistol Ass'n,*

---

[5] Plaintiff's claims based on the Ninth, Fifteenth, and Twenty-first Amendments are misplaced. Outside of perhaps the State of Indiana, there is no fundamental right to consume alcohol. *See Felix v. Milliken*, 463 F. Supp. 1360, 1372 (E.D. Mich. 1978) ("It becomes quickly apparent that [the right to drink alcohol] is not [implicitly or explicitly guaranteed by the United States Constitution]; and it further appears that the [T]wenty-first [A]mendment . . . explicitly or implicitly denies to an individual the claim that the right to drink alcohol is a fundamental right."); *Herman v. State*, 8 Ind. 545, 558 (1855) ("We lay down this proposition, then, as applicable to the present case; that the right of liberty and pursuing happiness secured by the constitution, embraces the right, in each compos mentis individual, of selecting what he will eat and drink, in short, his beverages.").

In addition, "[e]nacted in the wake of the Civil War, the immediate concern of the [Fifteenth] Amendment was to guarantee to the emancipated slaves the right to vote, lest they be denied the civil and political capacity to protect their new freedom." *Rice v. Cayetano*, 528 U.S. 495, 512 (2000). The Fifteenth Amendment's reference to "previous condition of servitude," the language Plaintiff's relies upon, was designed to ensure that former slaves were protected. *See id.*; *Malnes v. Arizona*, No. 16-CV-08008, 2016 WL 9685170, at *2 (D. Ariz. July 5, 2016) ("The language in the Fifteenth Amendment assuring that suffrage cannot be denied because of a 'previous condition of servitude' was drafted to ensure that a person's status as a newly emancipated slave could not be used as a race-based means of denying voting rights[.]"); *see also United States v. Kozminski*, 487 U.S. 931, 942 (1988) (holding that the "the phrase 'involuntary servitude' [in the Thirteenth Amendment] was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'"). While the Fifteenth Amendment also forbids the denial or

*Inc. v. Cuomo*, 804 F.3d 242, 261 n.107 (2d Cir. 2015) ("States are permitted to restrict the right

to bear arms by felons . . . [even] while equivalent restrictions on the right to speech or religious

freedoms among those populations would unquestionably be unconstitutional."); *D.C. v. Heller*,

554 U.S. 570, 626–27 (2008) ("[N]othing in our opinion should be taken to cast doubt on

longstanding prohibitions on the possession of firearms by felons . . . ."); *Richardson v. Ramirez*,

418 U.S. 24, 56 (1974) (holding that convicted felons, even those "who have completed their

sentences and paroles," may be "exclude[d] from the franchise" "consistent with the Equal

Protection Clause of the Fourteenth Amendment").

As before, Plaintiff fails to present any factual allegations explaining how or why the

release conditions are not reasonably or necessarily related to legitimate state interests in light of

the crime and conduct underlying his conviction.  (TAC 2–11; Pl. TAC Opp'n 1–10; Pl. Evans

TAC Opp'n 1–9.)  Instead, Plaintiff continues to argue that any condition that abridges a

constitutional right is *per se* unreasonable.  (*See* Pl. Evans TAC Opp'n 9.)  Because of the lack of

factual allegations, the Court is again unable to adequately assess whether the release conditions

permissively serve "legitimate interests of the parole regime" such as "rehabilitat[ion]" and

"protection of the public," tailored "in light of the conduct for which [Plaintiff] was convicted."

*Best v. Nurse*, No. CV 99-3727, 1999 WL 1243055, at *3 (E.D.N.Y. Dec. 16, 1999); (Order of

USCA, Docket Entry No. 14); *see also Farrell v. Burke*, 449 F.3d 470, 497 (2d Cir. 2006)

("Because [petitioner] was a convicted sex offender, *most regulations of his possession of sexual*

*material* would be 'reasonably and necessarily related to the Government's legitimate interests in

---

abridgement of the right to vote on account of race and color, Plaintiff does not seek relief on
such basis. *See Rice*, 528 U.S. at 512.
    Finally, "[t]he Ninth Amendment is not an independent source of individual rights;
rather, it provides a "rule of construction" that . . . appl[ies] in certain cases." *Jenkins v. C.I.R.*,
483 F.3d 90, 92–93 (2d Cir. 2007).

the parolee's activities' and thus would not violate the First Amendment." (emphasis added)).

Therefore, Plaintiff's challenge to the release conditions fails to state a claim upon which relief

can be granted. *See Pollard v. U.S. Parole Comm'n*, No. 15-CV-9131, 2016 WL 4290607, at

*12 (S.D.N.Y. Aug. 11, 2016) (denying the plaintiff's claims because the parole conditions were

"reasonably related to the characteristics of [the plaintiff] and his crime"), *aff'd*, 693 F. App'x 8

(2d Cir. 2017); *see also Birzon*, 469 F.2d at 1243 ("[W]e see no reason why the Government may

not impose restrictions on the rights of the parolee that are reasonably and necessarily related to

the interests that the Government retains after his conditional release."); *LoFranco*, 986 F. Supp.

at 802–03 ("As long as there is a reasonable nexus between the special condition of release and

the crime for which the individual was convicted, a parolee may have his actions reasonably

restricted in order to prevent his future criminality, and that includes depriving a parolee of his

freedom of association . . . .").

Even if the Court were to consider the circumstances underlying the crime of conviction

as described in the habeas decision, Plaintiff's claims would nevertheless fail.[6] Generally, "the

---

[6] Although the Court relied on Plaintiff's petition for a writ of habeas corpus to provide the background facts underlying Plaintiff's crime of conviction, *Trisvan*, 2015 WL 419685, at *2, the Court may not rely on those facts for the truth of the matters asserted therein. *See Global Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may [not] take judicial notice . . . for the truth of the matters asserted in . . . other litigation, but rather to establish the facts of such litigation and related filings."); *Gantt v. Ferrara*, No. 15-CV-7661, 2017 WL 1192889, at *14 (S.D.N.Y. Mar. 29, 2017) (taking judicial notice of only the conviction of a particular crime as provided in the related criminal dispositions); *Elliott v. Nestle Waters N. Am. Inc.*, No. 13-CV-6331, 2014 WL 1795297, at *8 (S.D.N.Y. May 6, 2014) ("[T]he Court may properly take judicial notice of the decisions to the extent that they establish that such decisions were rendered, though not to establish the truth of any matter asserted in the decisions."). Plaintiff must state in his own Complaint the factual allegations underlying his crime of conviction for the Court to properly analyze whether he has stated a plausible claim for relief.

In addition, despite citing to his habeas decision, Plaintiff did so claiming his innocence. (*See* TAC 10 ("Plaintiff is an innocent man, and has asserted his claim of innocence before this

imposition of conditions — whether imposed prior to or subsequent to release, by the parole

board or a field parole officer — must be upheld as long as they are reasonably related to a

parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism and

prevent further offenses." *Singleton v. Doe*, No. 14-CV-0303, 2014 WL 3110033, at *3

(E.D.N.Y. July 7, 2014) (quoting *Robinson*, 2010 WL 11507493, at *14); *Robinson*, 2010 WL

11507493, at *6 ("[W]here the condition is not related to the parolee's criminal history or to the

State's interests, it may be prone to tailoring or invalidation."). Under this deferential standard

and the facts as stated in the habeas decision alone, the special conditions appear to be

"reasonably designed to limit plaintiff's exposure to activities and associations that could tend to

lead him back into a life of crime." (Defs. TAC Mem. 6–7.) According to the habeas decision,

Plaintiff was convicted for first degree manslaughter. *Trisvan*, 2015 WL 419685, at *1. Plaintiff

---

Court [ten] years ago." (citing *Trisvan*, 2015 WL 419685)).) First, as Defendants point out,
Plaintiff may not collaterally attack his guilt in this action. (*See* Defs. TAC Mem. 13).); *Heck v.
Humphrey*, 512 U.S. 477, 484–85 (1994). Second, by claiming innocence, Plaintiff effectively
asserts that the facts, as described in the habeas decision, are untrue except for those supporting
his claim of innocence. By asserting an "actual innocence" claim in the habeas petition, Plaintiff
argued that his confession was coerced, that the physical evidence was incompatible with his
confession, that eyewitnesses had either recanted their testimony or were not credible and that
his appointed counsel improperly refused to offer his alibi at trial. *Trisvan*, 2015 WL 419685, at
*5–6. Even construing the TAC liberally, the Court cannot conclude that Plaintiff seeks to
incorporate *any* facts as described in the habeas decision other than those supporting his actual
innocence claim. *See Caidor v. M&T Bank*, No. 05-CV-297, 2006 WL 839547, at *5 (N.D.N.Y.
Mar. 27, 2006) ("[T]he Court cannot take judicial notice of the facts contained in these
documents because Plaintiff states that the affidavit is false, and a court may not take judicial
notice of the truth of disputed factual matters."); *see also Williams v. Time Warner Inc.*, 440 F.
App'x 7, 9 (2d Cir. 2011) ("A mere passing reference or even references, however, to a
document outside of the complaint does not, on its own, incorporate the document into the
complaint itself."); *Jackson v. Hanson*, No. 12–CV-654, 2014 WL 787820, at *11 (S.D.N.Y.
Feb. 25, 2014) (same in case involving *pro se* plaintiff). More importantly, even if the facts
underlying his conviction were incorporated, Plaintiff fails to sufficiently allege *why*, based on
those facts, the conditions are unreasonable or unnecessary. Instead, Plaintiff continues to assert
that Constitutional rights cannot be abridged for any reason. (*See* TAC 10 ("Every special
condition imposed upon Plaintiff violates his rights which are protected by the Constitution.").)

entered a housing development, known to be a gathering place for a gang, and shot and killed the

victim at around 1:30 a.m.  *Id.* at *2.  After shooting the victim, Plaintiff fled to Philadelphia for

approximately five months.  *Id.*  Based on these facts, the Court cannot conclude that any of the

special conditions are unreasonable or unnecessary.  The violent nature of the crime supports

limiting access to weapons.  Traveling and access to vehicles, including a driver's license, may

also be curtailed given Plaintiff's exhibited willingness to flee authorities.[7]  Given the timing of

the commission of the crime, a curfew may be especially reasonable in this case.  Conditions

limiting association with criminals or visits to establishments serving alcohol also appear

designed to prevent recidivism in general.  *See Morrissey v. Brewer*, 408 U.S. 471, 478 (1972)

("Typically, parolees are forbidden to use liquor or to have associations or correspondence with

certain categories of undesirable persons.").

---

[7]  Plaintiff asserts that the conditions preventing him from operating a vehicle, possessing a driver's license or potential weapons prevent him from "train[ing] or tak[ing] on certain careers that involve utilizing a vehicle" and other forms of employment.  (TAC 6.)  These conditions are not only common but also appear reasonably and necessarily related to legitimate state interests such as protecting the public and ensuring compliance with other parole requirements.  The restriction on possessing a driver's license and operating a vehicle, in conjunction with the travel condition, may assist parole officers in monitoring Plaintiff's activities, a "clearly legitimate penological objective[]."  *Muhammad v. Jenkins*, No. 12-CV-8525, 2014 U.S. Dist. LEXIS 158481, *18 (S.D.N.Y. Nov. 4, 2014); *see also Morrissey v. Brewer*, 408 U.S. 471, 478 (1972) ("Typically, [parolees] must seek permission from their parole officers before engaging in specified activities, such as . . .  acquiring or operating a motor vehicle . . . .").  In addition, Plaintiff does not provide any examples of how he personally has been impaired from gainful employment due to these restrictions.  Instead, Plaintiff appears to hypothesize careers that may be impacted.  However, conditions impacting employment are not only common, but generally upheld.  *See Morrissey*, 408 U.S. at 478 (recognizing that parolees "[t]ypically . . . must seek permission from their parole officers before engaging in specified activities, such as changing employment").  While Plaintiff may have a stronger claim regarding the conditions restricting his access to vehicles, (*see Gerena v. Rodriguez*, 596 N.Y.S.2d 143 (App. Div. 1993) (finding denial of permission to obtain driver's license to be within discretion of parole officer where petitioner had lured and driven away child victims in his car)), the Court does not have enough information to adequately assess his claims.

### c. Plaintiff fails to plead a valid First Amendment Free Exercise Clause claim

Nevertheless, Plaintiff may have a viable claim based on a violation of the Free Exercise Clause of the First Amendment. In particular, in his oppositions to the motions to dismiss, Plaintiff explained that the curfew condition had prevented him from meaningfully partaking in Ramadan, "an integral part of Islam."[8] (*See* Pl. Evans TAC Opp'n 7.) Plaintiff, for example, was unable to offer "Taraweeh prayers, . . . special prayers performed in the mosques during the night." (*Id.*) Nor was Plaintiff able to take part in "iftar, . . . a fast-breaking feast that is performed every night throughout the month of Ramadan." (*Id.*); *see also Yahweh v. U.S. Parole Comm'n*, 158 F. Supp. 2d 1332, 1346 (S.D. Fla. 2001) ("A restriction that prohibits an individual from engaging in group worship, but allows solitary worship, must be characterized as a substantial burden when group worship has been shown to be an important aspect of the religion."); *but see Muhammad v. Jenkins*, No. 12-CV-8525, 2014 U.S. Dist. LEXIS 158481, *17 (S.D.N.Y. Nov. 4, 2014) (denying preliminary injunction based on free exercise claim for denial of curfew modification because it was "at least reasonably likely that [the restriction] 'further[ed] some legitimate penological objective.'") (citation omitted).

Notwithstanding the permitted limitations on individual rights, "it is not doubtful . . . that the Constitution, and notably the First Amendment, reaches [even] inside prison walls." *Sobell v. Reed*, 327 F. Supp. 1294, 1303 (S.D.N.Y. 1971); *see also Best v. Nurse*, No. CV 99-3727,

---

[8] Because Plaintiff is proceeding *pro se*, the Court considers Plaintiff's factual allegations in his oppositions to the motions, in addition to the allegations in the TAC. *See, e.g., Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Small v. Ortlieb*, No. 10-CV-1616, 2012 WL 3229298, at *1 (E.D.N.Y. Aug. 6, 2012) ("[A]s part of this [c]ourt's duty to construe pro se pleadings liberally, the [c]ourt will take account of all the facts contained in both [plaintiff's] amended complaint and his opposition papers." (citation omitted)).

1999 WL 1243055, at *4 (E.D.N.Y. Dec. 16, 1999) ("Even prisoners have a right to associate with each other in religious services.").  Despite generally upholding prison policies, courts take into consideration various factors including the "availability of accommodations" in assessing the reasonableness of a particular restriction.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987); *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993).  Similarly, conditions of supervised release placing "[a]ny limitation on exercise of religious freedom rights must be as *narrow as practicable* and clearly related to an appropriate governmental need." *United States v. Hernandez*, 209 F. Supp. 3d 542, 546 (E.D.N.Y. 2016) (emphasis added); *see also United States v. Tolla*, 781 F.2d 29, 34 (2d Cir. 1986) ("A [probation] condition is *reasonable* if it is not unnecessarily harsh or excessive in achieving goals [of rehabilitating the defendant and protecting the public]." (citation omitted and emphasis in original)).

Admittedly, the penological interests and legal requirements underlying parole, prison, probation, and supervised release may differ in material respects.  Courts, for example, have recognized that "[t]he limitations on the exercise of constitutional rights [in prison] arise both from the fact of incarceration and from valid penological objectives — including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone*, 482 U.S. at 348.  By contrast, "legitimate interests of the parole regime" include "rehabilitat[ion]" and "*protection of the public*." *Best*, 1999 WL 1243055, at *3 (emphasis added).  In addition, the case law on supervised release has developed around federal statutory requirements that are inapplicable to parole.  *See United States v. Reeves*, 591 F.3d 77, 82–83 (2d Cir. 2010) ("Where a condition of supervised release impairs a protected associational interest, 'our application of [§ 3583(d) requirements] must reflect the heightened constitutional concerns' involved." (citation omitted)).  Nevertheless, courts recognize that "[prison], supervised release, parole and probation lie on a

continuum." *United States v. Browder*, 866 F.3d 504, 511 n.26 (2d Cir. 2017) (citation omitted); *see also United States v. Ramos*, 401 F.3d 111, 115 (2d Cir. 2005) ("This Court considers the constitutional protections for revocation of supervised release to be the same as those afforded for revocation of parole or probation.") (citation omitted); *Singleton v. Doe*, 210 F. Supp. 3d 359, 373 (E.D.N.Y. 2016) ("The view that some due process rights attach to special conditions of parole finds support in the related field of conditions of supervised release, to which due process protections also apply."); *Robinson*, 2010 WL 11507493, at *6 ("Conditional release, like supervised release under the federal framework, which operates under a similar set of legal standards, 'requires a defendant to alter his or her behavior, but compared to imprisonment, the conditions . . . impose a very minor infringement on a defendant's liberty.'") (citation omitted). Indeed, courts often borrow legal principles developed in one context and apply them in another. *See Birzon*, 469 F.2d at 1243 ("[N]o one has questioned the Government's power totally to deprive a convicted person of his freedom of association. By the same token, when a convict is conditionally released on parole, the Government retains a substantial interest in insuring that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts by the parolee."); *Sobell*, 327 F. Supp. at 1304 ("While there are differences between prisoners and parolees (or released persons like [plaintiff]), there are none that diminish the protections enjoyed by the latter under the First Amendment. So the principles of the foregoing cases apply here."). Nevertheless, given the deferential review of parole board decisions, (*see Pollard*, 2016 WL 4290607, at *5), the strongest claims will most likely include a showing of pretext. *See Sobell*, 327 F. Supp. at 1304 (finding denial of requested travel accommodation to speak at an anti-war demonstration to violate the First Amendment where parole board based its decision on the *content* of the proposed speech rather than the asserted factors related to public safety and

parolee rehabilitation).

Based on the foregoing legal principles, the Court finds it *likely* relevant whether there were any requested and available accommodations (in addition to the facts underlying the crime of conviction). *See Best*, 1999 WL 1243055, at *3 ("If a blanket ban on association is permitted, arguably so too is a policy that merely reduces the chance of contacts among parolees. And yet, restrictions can be no greater than needed where they infringe on First Amendment rights."); *Muhammad v. Jenkins*, No. 12-CV-8525, 2013 WL 5225573, at *11 (S.D.N.Y. Sept. 13, 2013) (declining to dismiss claim, on the ground of qualified immunity, based on refusal to modify curfew impacting religious practices); *see also Pollard*, 2016 WL 4290607, at *2 (discussing defendants' prior willingness to modify curfew to accommodate observance of the Sabbath). The Court recognizes that it may be the case that the facts underlying Plaintiff's crime of conviction are such that a blanket curfew, without any modifications, was reasonable and necessary. *See id.* (distinguishing case from *United States v. Schiff*, 876 F.2d 272, 273 (2d Cir. 1989) which "involved a challenge to the restrictions on the parolee's right of political association designed to prevent conduct similar to that which he had been convicted of"); *Yahweh v. U.S. Parole Comm'n,* 158 F. Supp. 2d 1332 (S.D. Fla. 2001) (finding that parolee could be prevented from associating with his religious sect where he had used religion as a means of exhorting his followers to commit racketeering acts). However, given the potential substantial impairment of Plaintiff's rights to exercise his faith, "[a] more nuanced balancing [may often be] required." *Best*, 1999 WL 1243055, at *3.

Should Plaintiff choose to pursue a First Amendment Free Exercise claim, he should, if possible, attach to the fourth amended complaint any written requests for accommodations, and written responses from Defendants. If lacking such documentation, Plaintiff should allege, in

detail, any requests for accommodations and Defendants' responses, including proffered reasons for denial, to such requests. While the condition on curfew may ultimately prove to be reasonable and necessary, the Court cannot decide the issue without an understanding as to what accommodations were requested, available, and the rationales for rejection. *See Turner v. Safley*, 482 U.S. 78, 90 (1987) (holding impact of accommodations and absence of ready alternatives are considerations in assessing the reasonableness of prison regulations impinging on constitutional rights); *see also Muhammad v. Evans*, No. 11-CV-2113, 2014 WL 4232496, at *8 (S.D.N.Y. Aug. 15, 2014) (applying standard for reasonableness of restrictions from *Turner* to parole conditions); *Boehm v. Evans*, 914 N.Y.S.2d 318, 320–21 (App. Div. 2010) (same). Without consideration of these factors, the First Amendment and the protections it affords would be eviscerated. While parolees, by the virtue of their crimes, are not entitled to the same rights as other citizens, the First Amendment cannot be reduced to a legal nullity.

### d. Plaintiff fails to plead a plausible First Amendment retaliation claim

In the TAC, Plaintiff asserts that he has been subject to more restrictive parole requirements in retaliation for his grievance complaint against Urena.[9] After being initially denied a request to travel outside of New York City, Plaintiff filed a complaint against Urena.

---

[9] The Court acknowledges that this new claim is beyond the scope of the leave to amend granted in the prior order. However, because Plaintiff is a *pro se* litigant, the Court declines to strike outright the improperly amended portions of the TAC. *See Azkour v. Bowery Residents' Comm., Inc.*, No. 13-CV-5878, 2017 WL 4329629, at *3 (S.D.N.Y. Sept. 13, 2017); *Youngblood v. City of New York*, No. 15-CV-3541, 2017 WL 3176002, at *5 (S.D.N.Y. July 24, 2017) (declining to dismiss *pro se* plaintiff's claims "solely because they exceed[ed] the scope of the leave granted"); *see also Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (holding that *pro se* litigants should be afforded leniency with regard to procedural matters). Nevertheless, because the Court dismisses the new retaliation claim with leave to amend, Defendant cannot be said to be prejudiced even if the motions to dismiss the TAC were prepared with a narrower scope of claims in mind. Should Plaintiff file another amended complaint, Defendant will have an opportunity to brief the retaliation claim.

(TAC 4.) In response, Defendants allegedly "penalized" Plaintiff, in part, by "strip[ing] [him] of his [L]evel Three status" and "plac[ing] [him] on Level One Status" instead. (*Id.*) This new status allegedly requires Plaintiff to report "every two weeks" instead of "every two months." (*Id.*)

To withstand a motion to dismiss, "First Amendment retaliation claims must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *Muhammad*, 2013 WL 5225573, at *11 (applying standard to parolee). The Second Circuit, however, has cautioned courts to approach "claims of retaliation with skepticism and particular care" in the penological context in part because "virtually any adverse action taken[,] even those otherwise not rising to the level of a constitutional violation[,] can be characterized as a constitutionally proscribed retaliatory act." *Davis*, 320 F.3d at 352 (citation omitted). Thus, the Second Circuit "require[s] that such claims be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted). Further, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Id.* at 353.

"The right to petition government for redress of grievances —in both judicial and administrative forums — is among the most precious of the liberties safeguarded by the Bill of Rights." *McCloud v. Kane*, 491 F. Supp. 2d 312, 317–18 (E.D.N.Y. 2007) (quoting *Graham,* 89 F.3d at 80). By "complaining about the conduct of his parole officer," Plaintiff engaged in a constitutionally protected activity. *Id.* In addition, the imposition of more stringent reporting

requirements appears to qualify as an "adverse action." The Court finds that the "prospect of the imposition of [more frequent reporting requirements] could deter a parolee from complaining about his parol officer." *Id.* Nevertheless, even liberally construed, Plaintiff fails to articulate a plausible retaliation claim because the allegations as to the motivation for the change in status level are wholly conclusory. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) (explaining that the Second Circuit has "insisted on a higher level of detail in [the] pleading[s]" for retaliation claims in the penological context). Plaintiff fails to allege any facts in support of his conclusory statement that he was "penalized for filing a grievance complaint." (TAC 4.) The TAC fails to provide when the grievance was filed and when the alleged adverse action was imposed — preventing even an inference of retaliation based on temporal proximity.

Should Plaintiff choose to pursue a First Amendment retaliation claim, he must allege facts as to the substance of the grievance he filed, with whom the complaint was filed (allegedly Annucci and Evans), and the dates and details of all relevant events as well as any facts that plausibly support the inference that he was subjected to adverse actions in retaliation for having engaged in the protected activity. *See also Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) ("Circumstantial facts indicating a retaliatory motive include '(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.'") (citation omitted); *cf. Cusamano v. Alexander*, 691 F. Supp. 2d 312, 321 (N.D.N.Y. 2009) (finding sufficient facts to infer improper motivation where defendant parole officer alleged stated that plaintiff had "opened up a can of worms with [his] letter writing campaign").

### e. Leave to amend

Defendants argue that Plaintiff's claims "should now be dismissed without leave to replead" given the prior opportunities to amend. (Def. TAC Mem. 2.) The Court is mindful of the time and resources expended by Defendants and agrees that "[a]t some point, [they] have a right to a final disposition of this matter." *McKethan v. New York State Dep't of Corr. Servs.*, No. 10-CV-3826, 2012 WL 2333415, at *2 (S.D.N.Y. June 19, 2012). Nevertheless, in an abundance of caution, the Court grants Plaintiff one last opportunity to cure the deficiencies identified in this Order. In doing so, the Court expressly warns Plaintiff that he will not be given any additional opportunities to amend. *See Konstantopoulos v. City of New York*, No. 16-CV-7754, 2017 WL 4736741, at *2 (S.D.N.Y. Oct. 19, 2017) (denying leave to amend after express warning). With this final leave to amend, Plaintiff will have been afforded three opportunities to cure his complaint following remand from the Second Circuit — more than enough chances, even for a *pro se* party. *See, e.g.*, *Youngblood v. City of New York*, No. 15-CV-3541, 2017 WL 3176002, at *6 (S.D.N.Y. July 24, 2017) (dismissing without leave to amend after second amended complaint); *Kelly v. Ulster Cty., NY*, No. 12-CV-1344, 2013 WL 3863929, at *6 (N.D.N.Y. July 24, 2013) (dismissing without leave to amend after three prior opportunities to amend); *George v. Pathways to Hous., Inc.*, No. 10-CV-9505, 2012 WL 2512964, at *7 (S.D.N.Y. June 29, 2012) (dismissing without leave to amend after two prior opportunities to amend); *McKethan v. New York State Dep't of Corr. Servs.*, No. 10-CV-3826, 2012 WL 2333415, at *2 (S.D.N.Y. June 19, 2012) (denying leave to amend the complaint a third time); *see also Colliton v. Bunt*, No. 15-CV-6580, 2016 WL 7443171, at *5 (S.D.N.Y. Dec. 27, 2016) (declining to consider facts contained in affidavit where Plaintiff had already amended complaint three times). In addition, to the extent Plaintiff seeks to add any additional claims, he must first

seek Defendants' consent or file a motion for leave to amend because he has already exhausted his one chance to do so as a matter of course.  *See* Fed. R. Civ. P. 15(a)(2).

With this understanding, the Court instructs Plaintiff again to "<u>provide . . . facts underlying his crime of conviction and explain why his release conditions are unreasonable or unnecessary in light of those facts.</u>"  *Trisvan II*, 2016 WL 7335609 at *5 (emphasis added).  As explained in the prior Order, the Court may only consider the facts that Plaintiff includes in his complaint.  *See Trisvan v. Annucci*, No. 14-CV-6016, 2016 WL 7335609, at *4 n.7 (E.D.N.Y. Dec. 16, 2016).  To be abundantly clear, Plaintiff cannot rely on the facts as recited in this or the prior Orders but must instead provide his own account of his crime of conviction — even if *identical* to the Court's recitations.  Plaintiff must therefore describe in detail the facts underlying his crime of conviction as found at trial and also, more importantly, explain why the parole conditions are unreasonable or unnecessary despite the actions for which he was convicted.  For all potential claims, Plaintiff should provide any details about any accommodations he requested and the responses he received, including the proffered reasons.  To help satisfy this requirement, Plaintiff <u>may also attach documents providing detail about his crime, his requests for accommodations and responses to his complaints.</u>

Plaintiff is advised that the fourth amended complaint will completely replace the prior complaints.  Therefore, Plaintiff must include in the fourth amended complaint all the necessary information contained in the prior complaints.  The fourth amended complaint must be captioned, "Fourth Amended Complaint," and must bear the same docket number as this Memorandum and Order.  If Plaintiff fails to file a fourth amended complaint within thirty (30) days of this Memorandum and Order, the Court will dismiss this action.

III.    **Conclusion**

For the foregoing reasons, the Court grants Defendants' motion to dismiss, and grants

Plaintiff leave to file a fourth amended complaint within thirty (30) days of this Memorandum

and Order.


                                        SO ORDERED:


                                        _____s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge

Dated: January 9, 2018
       Brooklyn, New York