UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JOHN TRISVAN,

                      Plaintiff,

                v.

ANTHONY ANNUCCI, Commissioner of the New
York State Division of Parole, LETRICIA
MCCLEARY, Senior Parole Officer for Brooklyn
V Area Office, ANNE GOULD, YVONNE KING,
VIKKY URENA, and A. GAYNOR, Parole
Officers for Brooklyn V Area Office, ANDREA
EVANS, Former Chair of the New York Parole
Board (2009-2013), and TINA STANFORD,
Present Chair of the New York Parole Board (2013-
Present),

                      Defendants.

**MEMORANDUM & ORDER**
14-CV-6016 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff John Trisvan, proceeding *pro se*, commenced the above-captioned action on October 14, 2014, against Defendants Anthony Annucci, Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"),[1] Letricia McCleary, Senior Parole Officer, and Anne Gould and Yvonne King, Parole Officers, of the "Brooklyn V Area Office," challenging the conditions of his parole and seeking relief pursuant to 42 U.S.C. § 1983. (Compl. 1, Docket Entry No. 1.) Plaintiff subsequently amended the Complaint three times, adding new claims and defendants. (*See* Am. Compl. 1, Docket Entry No. 6; Second Am. Compl. ("SAC") 2–4, Docket Entry No. 15; (Third Am. Compl. ("TAC") 5, Docket Entry No.

---

[1] Since the commencement of this action, Department of Correctional Services and Department of Parole have merged to form the new entity DOCCS. *See Trisvan v. Annucci*, 284 F. Supp. 3d 288, 292 n.1 (E.D.N.Y. 2018) ("*Trisvan III*").

57.) By Memorandum and Order dated January 9, 2018, the Court dismissed the TAC for failure to state a claim but granted Plaintiff leave to file a fourth amended complaint. (Mem. and Order dated Jan. 9, 2018, Docket Entry No. 79.) Plaintiff filed a Fourth Amended Complaint on February 9, 2018, asserting several constitutional challenges to his parole supervision. (Fourth Am. Compl. ("FAC"), Docket Entry No. 81.)

Plaintiff filed an Order to Show Cause on June 20, 2018, seeking a temporary restraining order and a preliminary injunction releasing him from parole supervision. (Pl. Order to Show Cause for Injunctive Relief ("Pl. OSC"), Docket Entry No. 88; Pl. Aff. in Supp. of Pl. OSC, Docket Entry No. 88-1.) Defendants oppose Plaintiff's applications. (Defs. Mem. in Opp'n to Pl. OSC ("Def Mem."), Docket Entry No. 93.) For the reasons set forth below, the Court denies Plaintiff's applications for injunctive relief.

**I. Background**

The Court assumes familiarity with the facts as detailed in its prior Memoranda and Orders and provides a summary of only the pertinent facts. *See Trisvan v. Annucci*, No. 14-CV-6016, 2015 WL 1966275, at *1 (E.D.N.Y. Apr. 29, 2015) ("*Trisvan I*"); *Trisvan v. Annucci*, No. 14-CV-6016, 2016 WL 7335609, at *5 (E.D.N.Y. Dec. 16, 2016) ("*Trisvan II*"); *Trisvan v. Annucci*, 284 F. Supp. 3d 288, 293 (E.D.N.Y. 2018) ("*Trisvan III*").

In January of 1997, Plaintiff's friend, Jermaine Cross, learned that Raheim Slaughter intended to rob Plaintiff.[2] *See Trisvan v. Ercole*, No. 07-CV-4673, 2015 WL 419685, at *2

---

[2] As explained in *Trisvan III*, the Court takes judicial notice of *Trisvan v. Ercole*, No. 07-CV-4673, 2015 WL 419685 (E.D.N.Y. Jan. 30, 2015), a decision in Plaintiff's federal habeas corpus case, which describes the factual background of Plaintiff's crime of conviction. *Trisvan*, 284 F. Supp. 3d at 293 n.4. The Court takes judicial notice of the habeas corpus case only to provide the background facts underlying Plaintiff's crime of conviction and does not rely on these facts for the truth of the matters asserted. *See Global Network Commc'ns Inc. v. City of*

2

(E.D.N.Y. Jan. 30, 2015). Cross discovered that Slaughter was in an apartment in the Albany Housing Complex in Brooklyn, New York. *Id.* at *1. On January 12, 1997, at approximately 1:30 AM, Plaintiff accompanied Cross to the apartment to confront Slaughter. *Id.* at *2. When Plaintiff and Cross arrived at the apartment, they found Slaughter and shot him several times. *Id.* Cross was arrested a few days later and told the police that Plaintiff was the second shooter. *Id.* The police went to Plaintiff's home, but he had fled to Philadelphia, Pennsylvania. *Id.* Plaintiff returned to New York in May of 1997 and surrendered to the police. *Id.* Based on an eyewitness identification and Plaintiff's confession, Plaintiff was convicted of manslaughter in the first degree and received an indeterminate sentence of twelve-to-twenty-five years of imprisonment. *Id.* at *3–4.

Plaintiff was granted parole on September 27, 2011, after serving fourteen years of his sentence at Great Meadow Correctional Facility. (FAC 2.) Plaintiff's parolee status precludes him from exercising his right to vote.[3] (FAC 7.) On April 18, 2018, New York State Governor Andrew Cuomo issued an Executive Order setting forth a procedure for eligible parolees to obtain conditional pardons restoring their right to vote (the "Executive Order"). (Executive Order annexed to FAC.) On May 22, 2018, Governor Cuomo issued a conditional pardon, restoring Plaintiff's right to vote (the "Pardon"). (Pardon annexed to FAC.) Plaintiff asserts that

---

*New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may [not] take judicial notice . . . for the truth of the matters asserted in . . . other litigation, but rather to establish the facts of such litigation and related filings.").

[3] New York State Election Law provides, in pertinent part, that "[n]o person who has been convicted of a felony pursuant to the laws of this state, shall have the right to register for or vote at any election unless he shall have been pardoned or restored to the rights of citizenship by the governor . . . ." N.Y. Elec. Law § 5-106.

3

the Pardon entitles him to release from parole supervision. (Pl. OSC 1.)[4]

## II. Discussion

### a. Standard of review

To obtain a temporary restraining order, a party must show "a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in [plaintiffs'] favor, and that an injunction is in the public interest." *See Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). A party may also obtain a temporary restraining order by showing, in the alternative, "irreparable harm and either a likelihood of success on the merits or 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward [Plaintiff].'" *Clapper*, 785 F.3d at 825 (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012)). "The purpose of a temporary restraining order is to preserve an existing situation *in statu[s] quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (quoting *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter*, 306 F.2d 840, 842 (2d Cir. 1962)).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *G.B. ex rel. T.B. v. Carrion*, 486 F. App'x 886, 888 (2d Cir. 2012) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v.*

---

[4] Because Plaintiff's Order to Show Cause is not consecutively paginated and includes Plaintiff's affirmation and Governor Cuomo's Executive Order and Pardon, the Court refers to all documents by the page numbers assigned by the Electronic Court Filing ("ECF") system.

*Camenisch*, 451 U.S. 390, 395 (1981). "A party seeking a preliminary injunction must ordinarily establish (1) 'irreparable harm'; (2) 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party'; [(3) that the balance of hardships tips in its favor]; and ([4]) 'that a preliminary injunction is in the public interest.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015), *cert. dismissed sub nom. Allergan PLC v. New York ex. rel. Schneiderman*, —— U.S. ——, 136 S. Ct. 581 (2015) (citation omitted); *Benihana, Inc. v. Benihana of Tokyo, LLC,* 784 F.3d 887, 895 (2d Cir. 2015). "A heightened standard applies when a movant seeks a preliminary injunction that either alters the status quo or would provide the ultimate relief sought in the underlying action." *Demirayak v. City of New York*, No. 17-CV-3709, —— F. App'x ——, 2018 WL 4043330, at *1 (2d Cir. Aug. 24, 2018). "Under this heightened standard, plaintiff must make a clear showing that he is entitled to the relief requested, or that 'extreme or very serious damage' will result from denial of preliminary relief." *Id.* (quoting *Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2d Cir. 2003)).

  **b. Plaintiff is not entitled to injunctive relief**

Plaintiff argues that he is entitled to release from parole supervision pursuant to the Pardon because it restores Plaintiff's "fundamental right of liberty." (Pl. Aff. 1.) Plaintiff also argues that he "will suffer immediate and irreparable injury, loss and damage" unless the Court grants temporary and preliminary injunctive relief. (*Id.*)

Defendants argue that Plaintiff is not entitled to the relief sought because the Pardon is only a conditional pardon issued to Plaintiff for the sole purpose of restoring his right to vote. (Defs. Mem. 2.) Because Plaintiff has no clear likelihood of success on the merits of his claim as

5

explained below, the Court denies his application for injunctive relief.[5]

New York State Election Law "prohibits convicted felons from voting while they are serving a prison sentence or while they are on parole following a prison sentence."[6] *Hayden v Peterson*, 594 F.3d 150, 155 (2d Cir. 2010) (citing N.Y. Elec. Law § 5–106(2)). However, the law "does allow felons to vote if they have completed their sentences, received suspended sentences, or never been sentenced to a term of imprisonment. *Id.* (citing N.Y. Elec. Law § 5–106(2).) "Thus, a felon in New York is disenfranchised only until his 'maximum sentence of imprisonment has expired' or 'he has been discharged from parole.'" *Id.* (citing N.Y. Elec. Law § 5–106(2).)

Recognizing that "the right to vote is a fundamental tenant of our democracy and the underpinning of a representative government," and that "restoration of the right to vote is an important aspect of the reintegration of individuals under parole supervision back into society to become law-abiding and productive citizens," on April 18, 2018, Governor Cuomo signed an Executive Order to allow for the restoration of the right to vote to New Yorkers on parole.

---

[5] Given that Plaintiff is unable to satisfy this prong of the test, the Court declines to consider whether Plaintiff will suffer irreparable harm or can demonstrate that the equities tip in his favor." *Demirayak v. City of New York*, No. 17-CV-3709, ––– F. App'x –––, 2018 WL 4043330, at *1–2 (2d Cir. Aug. 24, 2018) (affirming denial of plaintiff's request for preliminary injunctive relief because plaintiff failed to establish a "clear likelihood of success on the merits").

[6] New York Election Law section 5-106 provides in pertinent part:
> No person who has been convicted of a felony pursuant to the laws of this state, shall have the right to register for or vote at any election unless he shall have been pardoned or restored to the rights of citizenship by the governor, or his maximum sentence of imprisonment has expired, or he has been discharged from parole. The governor, however, may attach as a condition to any such pardon that any such person shall not have the right of suffrage until it shall have been separately restored to him.

N.Y. Elec. Law § 5–106(2).

(Executive Order 1.) In taking this action, Governor Cuomo acknowledged that "tens of thousands of New Yorkers who are living in the community while on parole are disenfranchised as a result of a prior conviction and their status on parole," and that "the disenfranchisement of individuals on parole has a significant disproportionate racial impact thereby reducing the representation of minority populations." (*Id*.) He noted the differential treatment between "New Yorkers who are sentenced to a term of probation and are allowed to vote in any election," and "New Yorkers on parole" who cannot vote but "are serving their sentences in the community and operating under," restrictions similar to New Yorkers sentenced to probation. (*Id*.) The Executive Order dictates that individuals under parole supervision "will be given consideration for a conditional pardon that will restore voting rights without undue delay." (*Id.* at 2.) The Executive Order requires DOCCS to submit to the Governor's Office "a monthly list of individuals who have been released from prison onto parole supervision in the prior month." (*Id*.) The Governor's Office then reviews the individuals on the list "to determine whether eligible parolees will be granted a pardon to restore their voting rights." (*Id*.)

On May 22, 2018, Governor Cuomo pardoned Plaintiff "for the sole purpose of restoring [his] right to vote." (Pardon 1.) The Pardon states that it "shall not be construed as a remission of guilt or forgiveness of the offense and shall not function as a bar to greater penalties for future offenses." (*Id*.) Contrary to Plaintiff's claim, none of the provisions in the Executive Order or Pardon mandate Plaintiff's release from parole supervision.[7] While it does restore Plaintiff's

---

[7] The Pardon specifies that it does not:
> "include rights with respect to the receipt, transportation, or possession of firearms as provided by New York State Penal Law Section 400, nor shall it relieve an individual of any unpaid restitution, fine, or other financial obligation resulting from a conviction, nor shall it restore the right to hold public office, nor

fundamental right to vote, it does not release Plaintiff from parole supervision.  As a result, Plaintiff has not, and cannot, establish a clear likelihood of success on the merit of his claim. *Cooke v. U.S. Bank Nat'l Assoc. for Structured Asset Sec. Corp. Mortg. Pass-Through Certificates, Series 2006-BC5*, No. 17-CV-1393, 2017 WL 4334084, at *1 (E.D.N.Y. July 10, 2017) (denying plaintiff's request for temporary restraining order because "plaintiff [had] failed to show a likelihood of success on the merits," and "he [had] not availed himself of the opportunity to submit an amended complaint").

The Court therefore denies Plaintiff's application for injunctive relief.

### III. Conclusion

For the foregoing reasons, the Court denies Plaintiff's application for temporary and preliminary injunctive relief.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: November 5, 2018
      Brooklyn, New York

---

shall the order cause the underlying conviction to be sealed." (Pardon.)