UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------
JOHN TRISVAN,

                        Plaintiff,                **MEMORANDUM & ORDER**
                                                                                     14-CV-6016 (MKB)
                    v.

ANTHONY ANNUCCI, Commissioner of the New
York State Division of Parole, LETRICIA
MCCLEARY, Senior Parole Officer for Brooklyn
V Area Office, ANNE GOULD, YVONNE KING,
VIKKY URENA, A. GAYNOR, AUDREY
THOMPSON, JOHN DOE, NIGEL JOSEPH, HAL
WILKERSON, Parole Officers for Brooklyn V
Area Office, ANDREA EVANS, Former Chair of
the New York Parole Board (2009–2013), and
TINA STANFORD, Present Chair of the New York
Parole Board (2013–Present),

                        Defendants.
-----------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

       Plaintiff John Trisvan, proceeding *pro se*, commenced the above-captioned action on October 14, 2014 against Defendants Anthony Annucci, Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"),[1] Letricia McCleary, Audrey Thompson, Hal Wilkerson, Senior Parole Officers, Ivy Gaynor, Anne Gould, and Yvonne King, Parole Officers of the "Brooklyn Area Office," and Nigel Joseph, Regional Director and former Bureau Chief Officer, challenging the conditions of his parole and seeking relief pursuant to 42 U.S.C. § 1983. (Compl. 1, Docket Entry No. 1.) Plaintiff subsequently

---

[1] Since the commencement of this action, the Department of Correctional Services and Department of Parole have merged to form the new entity, DOCCS. (*See* Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem.") 1 n.1, Docket Entry No. 113.)

amended the complaint four times, adding new claims and defendants. (*See* Am. Compl. 1, Docket Entry No. 6; Second Am. Compl. ("SAC") 2–4, Docket Entry No. 15; Third Am. Compl. ("TAC") 5, Docket Entry No. 57; Fourth Am. Compl. ("FAC") 2, Docket Entry No. 81.) Plaintiff filed the FAC on February 8, 2018, which largely mirrors the prior complaints but provides some additional facts about Plaintiff's prior criminal conviction and parole supervision, and adds Joseph, Thompson, Wilkerson, and John Doe as Defendants. (FAC 1–2.)

Currently before the Court is Defendants' motion to dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Defs. Mot. to Dismiss FAC ("Defs. Mot."), Docket Entry No. 112; Defs. Mem in Supp. of Defs. Mot. ("Defs. Mem"), Docket Entry No. 113.) Plaintiff opposes the motion. (Pl. Opp'n to Defs. Mot. ("Pl. Opp'n"), Docket Entry No. 111.) For the reasons set forth below, the Court grants in part and denies in part Defendants' motion to dismiss.

## I. Background

### a. Factual background

On January 12, 1997, during the early morning hours, Plaintiff accompanied his friend, Jermaine Cross, to a housing complex in Brooklyn, New York to confront an individual named Raheem Slaughter. (FAC 2.) When Plaintiff and Cross found Slaughter at the complex, Cross and Slaughter began to argue. (*Id.*) Moments after, "shots were fired" and Cross and Plaintiff fled the scene on foot. (*Id.*) Cross and Plaintiff were arrested on January 17, 1997 and May 12, 1997, respectively. (*Id.*) Plaintiff was later convicted of manslaughter in the first degree and served fourteen years at the Great Meadow Correctional Facility. (*Id.*)

Plaintiff was granted parole on September 27, 2011. (*Id.*) Gould, Plaintiff's initial parole supervisor, informed Plaintiff of the conditions of his parole, which included:

> a) curfew between the hours of 9 p.m. and 7 a.m.;
> b) no use of alcohol or [attendance] in an establishment where alcohol is [the] main level of business;
> c) no fraternizing or being in the company of convicted felons/felony offenders;
> d) no travel outside of the City of New York or New York State;
> e) cannot operate a vehicle or have possession of a driver's license;
> f) cannot possess a firearm or sharp instrument that can be used and ruled as a weapon.

(*Id.* at 2–3.) King subsequently replaced Gould as Plaintiff's parole supervisor, and informed Plaintiff that he remained subject to the same conditions of release. (*Id.*) King also informed Plaintiff that the release conditions were imposed by Commissioner Annucci, who forwarded them to King's supervisor, McCleary. (*Id.*) Plaintiff alleges that the conditions of parole left him "unable to fully practice his religion of Islam" because he has been "denied the ability to perform the [five] obligatory congregational prayers throughout the day and night at the mosque, which as a Muslim male he is required to do, as well as, make 'Haji[,]' a pilgrimage to Mecca." (*Id.*) Plaintiff also contends that his conditions of parole have prevented him from exercising his "right to associate freely with other members of his community," vote in elections,[2] and "strength[en] ties with his family and friends." (*Id.*)

In approximately March of 2015, Urena replaced King as Plaintiff's parole supervisor. (*Id.*) Plaintiff was informed that he needed to submit a request to travel outside of New York City. (*Id.*) Sometime thereafter, Plaintiff requested permission to travel to Albany, New York and Urena's supervisor, Parole Officer John Doe, informed Plaintiff that he would have to provide documentation detailing his lodging and transportation arrangements.[3] (*Id.* at 3–4.)

---

[2] On May 22, 2018, New York State Governor Andrew Cuomo issued Plaintiff a conditional pardon, restoring Plaintiff's right to vote. *See Trisvan v. Annucci*, No. 14-CV-6016, 2018 WL 5791915, at *2 (E.D.N.Y. Nov. 5, 2018).

[3] Plaintiff does not specify when he made his travel request.

3

Plaintiff also spoke to Urena about his intention to reside in Albany, New York to pursue higher education and to visit two college campuses in May of 2015. (*Id*. at 3.) Plaintiff provided the requested information, and Urena and John Doe spoke to Plaintiff's fiancé, who "corroborated Plaintiff's statements" and informed them that she "was granting Plaintiff permission to stay at her home the week at which the colleges were having open house." (*Id*. at 3–4.) Approximately two weeks later, Plaintiff's travel request was denied. (*Id.* at 4.) Plaintiff subsequently filed "a complaint to Defendants Annucci and Evans . . . making them aware of this injustice."[4] (*Id*.) On July 27, 2015, Steven A. Claudio, Assistant Commissioner for Community Supervision, informed Plaintiff that, "in regards to his grievance complaint," Urena and John Doe denied his travel request because it was "too vague" and "inconsistent." (*Id*.)

On or about July 10, 2015, Plaintiff provided Gaynor, who replaced Urena as Plaintiff's parole supervisor in June of 2015, with a request to travel to Albany for the purpose of attending "two open house meetings and an informational session at Sage College, and College of Saint Rose," on Friday, July 31, 2015. (*Id.*) Plaintiff also requested that his parole supervision be transferred to Albany. (*Id*.) Plaintiff's requests "were deferred." (*Id*.) Plaintiff alleges that Gaynor and Bureau Chief Joseph threatened "to not even hear or even 'consider' future travel requests submitted by Plaintiff if he decided to report future denials to their superiors in the Central Office." (*Id*.)

Although his travel request was eventually granted in August of 2015, Plaintiff alleges that he was stripped of his "level three" status in late June of 2015, in retaliation for his

---

[4] Plaintiff also alleges that he "filed a grievance to Central Office in Albany, New York." (FAC 4.) This grievance appears to be the same complaint he filed with Annucci and Evans. (*Id*. (stating that Plaintiff received "word from Central Office . . . in regards to his grievance complaint").)

4

grievance complaint. (*Id.*) As a result of his now "level one" status, Plaintiff must report to his parole officer every two weeks instead of once every two months. (*Id.*) Plaintiff also alleges that he has had to agree to these conditions each time he has been assigned a new parole officer. (*Id.*) According to Plaintiff, he has "completed all recommended programs, passed all urinalysis tests" and has "avoid[ed] run-ins with the law." (*Id.*)

### b. Procedural background

The Court assumes familiarity with the procedural background as detailed in its prior Memorandum and Order dated January 9, 2018 (the "January 2018 Decision"), and provides only a summary below. *See Trisvan v. Annucci*, 284 F. Supp. 3d 288, 294 (E.D.N.Y. 2018).

In the TAC, Plaintiff repeated his prior assertions that the release conditions violate multiple constitutional amendments. (TAC 5.) Plaintiff did not provide any facts underlying his crime of conviction or allegations as to why the release conditions were unreasonable or unnecessary. (*See generally id.*) Instead, Plaintiff included allegations that the restriction on alcohol consumption violates his rights under the Twenty-First Amendment and that his right to vote was infringed in violation of the Fifteenth Amendment. (*Id.*)

In the January 2018 Decision, the Court dismissed Plaintiff's TAC but granted Plaintiff leave to file a fourth and final amended complaint. *Trisvan*, 284 F. Supp. at 293. The Court instructed Plaintiff to "provide . . . facts underlying his crime of conviction and explain why his release conditions are unreasonable or unnecessary in light of those facts." *Id*. at 304 (quoting *Trisvan v. Annucci ("Trisvan II")*, No. 14-CV-6016, 2016 WL 7335609, at *5 (E.D.N.Y. Dec. 16, 2016).) The Court specifically advised Plaintiff that he "must . . . describe in detail the facts underlying his crime of conviction as found at trial and also, more importantly, explain why the parole conditions are unreasonable or unnecessary despite the actions for which he was

convicted." *Id.* The Court also informed Plaintiff that "[f]or all potential claims, Plaintiff should provide any details about any accommodations he requested and the responses he received, including the proffered reasons." *Id*.

Plaintiff filed the FAC on February 8, 2018. (FAC.) In the FAC, as detailed above, Plaintiff added some details concerning his conviction, travel requests, his grievance to the "Central Office," comments from his parole officers, and the approximate date on which Defendants altered his reporting requirements.

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord Assoc's, L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se*

complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a pro se complaint liberally"). Thus, courts must liberally construe papers submitted by *pro se* litigants "to raise the strongest arguments they suggest." *Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015).

### b. Plaintiff fails to allege that the release conditions are not "reasonably and necessarily" related to legitimate state interests in light of his conviction

Defendants argue that Plaintiff fails to allege facts sufficient to show that the special parole conditions are arbitrary and capricious. (Defs. Mem. 9.)

Plaintiff asserts that the restrictions are unconstitutional and that Defendants have violated his constitutional rights by enforcing them. (Pl. Opp'n 2 ("It has been noted that Plaintiff's constitutional rights are not unfettered . . . . These rights were deemed by the framers . . . as 'inalienable.'").) In addition, Plaintiff argues that his crime of conviction did not involve alcohol or travel and that therefore Defendants may not subject him to any restriction on his right to purchase and consume alcohol or his right to travel. (FAC 7.) Plaintiff also argues that he has "served his time," and therefore should not be subject to any further supervision. (*Id*.) Lastly, Plaintiff asserts that the restrictions are unnecessary because he has been a "law-abiding citizen" since his release and the conditions do not promote his rehabilitation. (*Id*. at 8–9.).

As the Court explained in its prior decision, parolees may be subject to "restrictions not applicable to other citizens." *Trisvan*, 284 F. Supp. 3d at 296 (quoting *Trisvan II*, 2016 WL 7335609, at *3 (citation omitted)). Fundamental constitutional rights may be abridged to serve reasonable and necessary penological interests. Courts, in the context of parolees, have

7

expressly allowed limitations of the very constitutional rights on which Plaintiff bases his claims. *See Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972) (upholding parole condition placing limitations on the fundamental right of freedom of association protected by the First Amendment); *Robinson v. New York*, No. 09-CV-0455, 2010 WL 11507493, at *4 (N.D.N.Y. Mar. 26, 2010) (finding that the imposition of parole conditions "do[] not implicate the Double Jeopardy Clause because they are not additional to but rather are part of the original sentence"); *id.* at *5 (finding that "drug testing, a curfew, . . . home visits, surrender [of] driver's license," and other common parole conditions did not constitute "sufficiently grave [deprivations] to form the basis of an Eight Amendment violation" (citation omitted)); *Watson v. Cieslak*, No. 09-CV-2073, 2010 WL 93163, at *5 (S.D.N.Y. Jan. 11, 2010) (finding that the denial of a travel pass did not violate the parolee's constitutional rights); *Rizzo v. Terenzi*, 619 F. Supp. 1186, 1189 (E.D.N.Y. 1985) (holding that an "individual's [constitutionally protected] right to travel, extinguished by conviction and subsequent imprisonment, is not revived upon parole"). Further, statutes *eliminating* the right of felons to bear arms or vote have been upheld as constitutional.[5] *See District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."); *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974) (holding that it would be "consistent with the Equal Protection Clause of the Fourteenth Amendment" for convicted felons, even those "who have completed their sentences and paroles," to be "exclude[d] from the

---

[5] The Court previously found that Plaintiff's claims based on the Ninth, Fifteenth, and Twenty-first Amendments are misplaced. *See Trisvan v. Annucci*, 284 F. Supp. 3d 288, 299 n.5 (E.D.N.Y. 2018) (finding that there is no fundamental right to consume alcohol, that the Ninth Amendment is not an independent source of rights, and that the Fifteenth Amendment does not protect Plaintiff against the allegations raised in his complaint).

franchise"); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 261 n.107 (2d Cir. 2015) ("States are permitted to restrict the right to bear arms by felons . . . [even] while equivalent restrictions on the right to speech or religious freedoms among those populations would unquestionably be unconstitutional.").

Generally, "the imposition of conditions — whether imposed prior to or subsequent to release, by the parole board or a field parole officer — must be upheld as long as they are reasonably related to a parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism and prevent further offenses." *Singleton v. Doe*, No. 14-CV-0303, 2014 WL 3110033, at *3 (E.D.N.Y. July 7, 2014) (quoting *Robinson*, 2010 WL 11507493, at *14); *Robinson*, 2010 WL 11507493, at *6 ("[W]here the condition is not related to the parolee's criminal history or to the State's interests, it may be prone to tailoring or invalidation.").

In light of Plaintiff's conviction for manslaughter, the special conditions appear to be, as argued by Defendants, "reasonably designed to limit Plaintiff's exposure to activities and associations that could tend to lead him back into a life of crime." (Defs. Mem. 7.) Plaintiff was convicted of first-degree manslaughter. (FAC 2.) Plaintiff entered a housing development and shot and killed the victim during early morning hours. (*Id*.) After shooting the victim, Plaintiff fled and was arrested approximately four months later. (*Id*.) Based on these facts, as alleged by Plaintiff in the FAC, the Court cannot conclude that any of the special conditions are unreasonable or unnecessary. As the Court previously found, the violent nature of the crime supports limiting access to weapons, traveling, and access to vehicles, and Plaintiff's ability to hold a driver's license may also be curtailed given Plaintiff's exhibited willingness to flee authorities. *Trisvan*, 284 F. Supp. 3d at 299.

Plaintiff asserts that his conditions of parole are arbitrary and capricious because they

9

prevent his rehabilitation and prevent him from gaining access to certain employment such as a commercial driver or forklift operator. (FAC 6.) However, the restrictions on possessing a driver's license and operating a vehicle, in conjunction with the travel restriction, may assist parole officers in monitoring Plaintiff's activities, which is a legitimate penological objective. *See Muhammad v. Jenkins*, No. 12-CV-8525, 2014 U.S. Dist. LEXIS 158481, *18 (S.D.N.Y. Nov. 4, 2014) ("New York has a particular interest in monitoring individuals on supervised release because parolees are particularly likely to commit criminal offenses."); *see also Morrissey v. Brewer*, 408 U.S. 471, 478 (1972) ("Typically, [parolees] must seek permission from their parole officers before engaging in specified activities, such as . . . acquiring or operating a motor vehicle . . . ."). In addition, although Plaintiff only appears to hypothesize about careers that may be impacted, conditions impacting employment are not only common, but generally upheld. *See Morrissey*, 408 U.S. at 478 (recognizing that parolees "[t]ypically . . . must seek permission from their parole officers before engaging in specified activities, such as changing employment").

Lastly, because Plaintiff committed the crime within the early morning hours, a curfew may be especially reasonable in this case, and conditions limiting association with criminals or visits to establishments serving alcohol also appear designed to prevent recidivism in general. *See Morrissey v. Brewer*, 408 U.S. 471, 478 (1972) ("Typically, parolees are forbidden to use liquor or to have associations or correspondence with certain categories of undesirable persons.").

Accordingly, Plaintiff's challenge to the release conditions fails to state a claim upon which relief can be granted. *See Pollard v. U.S. Parole Comm'n*, No. 15-CV-9131, 2016 WL 4290607, at *12 (S.D.N.Y. Aug. 11, 2016) (dismissing the plaintiff's claims because the parole

10

conditions were "reasonably related to the characteristics of [the plaintiff] and his crime"), *aff'd*, 693 F. App'x 8 (2d Cir. 2017); *see also Birzon*, 469 F.2d at 1243 ("[W]e see no reason why the Government may not impose restrictions on the rights of the parolee that are reasonably and necessarily related to the interests that the Government retains after his conditional release."); *LoFranco v. U.S. Parole Comm'n*, 986 F. Supp. 796, 802–03 (S.D.N.Y. 1997) ("As long as there is a reasonable nexus between the special condition of release and the crime for which the individual was convicted, a parolee may have his actions reasonably restricted in order to prevent his future criminality, and that includes depriving a parolee of his freedom of association . . . ."). The Court therefore grants Defendants' motion to dismiss Plaintiff's challenge to the parole conditions.

   c.   **Plaintiff fails to plead a First Amendment Free Exercise Clause claim**

In the January 2018 Decision, the Court informed Plaintiff that "[s]hould [he] choose to pursue a First Amendment Free Exercise claim, he should, if possible, attach to the fourth amended complaint any written requests for accommodations, and written responses from Defendants. If lacking such documentation, Plaintiff should allege, in detail, any requests for accommodations and Defendants' responses, including proffered reasons for denial, to such requests." 284 F. Supp. 3d at 302.

In the FAC, Plaintiff does not detail any requests for accommodations. Plaintiff only states in a conclusory manner that he has requested religious accommodations and "that such requests were made to his parole officers and higher authorities, which were not granted by Defendants." (Pl. FAC Opp'n 7–8.) The Court is not "required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). The Court therefore dismisses Plaintiff's First Amendment Free Exercise Clause

claim as he fails to allege any facts in support of this claim.

> d. **Plaintiff plausibly pleads a First Amendment retaliation claim against Annucci and Gaynor**

Defendants argue that Plaintiff fails to cure the deficiencies of his First Amendment retaliation claim because the minimal allegations in the FAC are "vague and imprecise," and therefore insufficient to allow an inference of retaliation based on temporal proximity. (Defs. Mem. 13.) Defendants also argue that, assuming Plaintiff can establish an inference of retaliation, "there is no allegation to show that any defendant was involved in the alleged retaliatory act — increasing the frequency of Plaintiff's reporting — let alone that they were even aware of the grievance Plaintiff allegedly filed." (*Id.*)

In the January 2018 Decision, the Court instructed Plaintiff that if he chose "to pursue a First Amendment retaliation claim, he must allege facts as to the substance of the grievance he filed, with whom the complaint was filed (allegedly Annucci and Evans), and the dates and details of all relevant events as well as any facts that plausibly support the inference that he was subjected to adverse actions in retaliation for having engaged in the protected activity." *Trisvan*, 284 F. Supp. 3d at 303.

In the FAC, Plaintiff asserts that he has been subjected to more restrictive parole requirements in retaliation for his grievance complaint against Urena. (FAC 4.) After being initially denied a request to travel outside of New York City, Plaintiff "filed a complaint with Defendants Annucci and Evans."[6] (*Id.*) In response, Plaintiff alleges that Defendants "penalized" him, in part, by "strip[ping] [him] of his Level Three status" and "plac[ing] [him] on

---

[6] Plaintiff does not specify when he filed this grievance. However, based on the allegations in the FAC, the Court infers that the grievance was filed approximately two weeks after he made his travel request in March of 2015. (FAC 3–4.)

12

Level One Status" instead, requiring Plaintiff to report to his parole officer "every two weeks" instead of "every two months."  (*Id.*)  On July 27, 2015, Steven A. Claudio, Assistant Commissioner for Community Supervision, responded to Plaintiff's grievance and told Plaintiff that his request to travel was "too vague" and "inconsistent."  (*Id.*)

### i. Plaintiff has plausibly alleged a First Amendment retaliation claim

To withstand a motion to dismiss, "First Amendment retaliation claims must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)); *see Muhammad v. Jenkins*, No. 12-CV-8525, 2013 WL 5225573, at *11 (S.D.N.Y. Sept. 13, 2013) (applying standard to parolee).  The Second Circuit, however, has cautioned courts to approach "claims of retaliation with skepticism and particular care" in the penological context in part because "virtually any adverse action taken[,] even those otherwise not rising to the level of a constitutional violation[,] can be characterized as a constitutionally proscribed retaliatory act."  *Davis*, 320 F.3d at 352 (citation omitted).  Thus, the Second Circuit "require[s] that such claims be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'"  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted).

"To plausibly allege causation, a plaintiff 'must allege facts suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him].'"  *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotations and citation omitted); s*ee also Burton*, 664 F. Supp. at 367 ("Circumstantial facts indicating a retaliatory motive include

'(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.'") (citation omitted); *cf. Cusamano v. Alexander*, 691 F. Supp. 2d 312, 321 (N.D.N.Y. 2009) (finding sufficient facts to infer improper motivation where the defendant parole officer alleged that the plaintiff had "opened up a can of worms with [his] letter writing campaign").

The Court previously found that by "complaining about the conduct of his parole officer, Plaintiff engaged in a constitutionally protected activity." *Trisvan*, 284 F. Supp. 3d at 303 (citation and internal quotation marks omitted). The Court also previously found that "the imposition of more stringent reporting requirements appears to qualify as an adverse action" and that the "prospect of the imposition of [more frequent reporting requirements] could deter a parolee from complaining about his parole officer." *Id*. (citation and internal quotation marks omitted).

In the FAC, Plaintiff alleges that he "filed a complaint" with "Defendants Annucci and Evans" at the time his first travel request and transfer request were denied, which was in or about March of 2015, and, approximately three months later, in June of 2015, his reporting requirements were changed. (FAC 4.) The approximately three-month gap between Plaintiff's grievance and the change in his reporting requirements is sufficient to plausibly allege that the filing of his grievance was a motivating factor in Defendants' decision to change his reporting requirements. *See Cronin v. St. Lawrence*, No. 08-CV-6346, 2009 WL 2391861, at *5 (S.D.N.Y. Aug. 5, 2009) (declining to dismiss the plaintiff's First Amendment retaliation claim where there was an eleven-month gap between his protected activity and the adverse action). In addition, Plaintiff alleges that Gaynor and Joseph told him that if he complained again to their bosses,

14

(indicating that they were aware of Plaintiff's complaint) they would not even consider any of his future travel requests. (*Id*. at 4–5.) When considered in their totality, Plaintiff's allegations are sufficient to plausibly allege causation.

### ii. Personal involvement

Defendants argue that "there is no allegation to show that any [D]efendant was involved in the alleged retaliatory act — increasing the frequency of Plaintiff's reporting — let alone that they were even aware of the grievance Plaintiff allegedly filed." (Defs. Mem. 13.) The Court finds otherwise.

"To prevail in a First Amendment retaliation claim under 42 U.S.C. § 1983, 'a plaintiff must show by a preponderance of the evidence that the defendant was personally involved — that is, he directly participated — in the alleged constitutional deprivations.'" *Smith v. Levine*, 510 F. App'x 17, 20 (2d Cir. 2013) (quoting *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005)); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (finding that a plaintiff must demonstrate each defendant's personal involvement in the actions that are alleged to have caused the deprivation of the plaintiff's constitutional rights); *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (same). For purposes of personal involvement, direct participation means "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). Indirect conduct "such as ordering or helping others to do the unlawful acts, rather than doing them oneself," may also constitute direct participation. *Id*. Personal involvement can also be shown by:

> evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which

> unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Plaintiff's allegations that Annucci imposed his conditions of parole, (FAC 3), and that he filed his grievance with Annucci, (*id*. at 4), are sufficient at this stage to show Annucci's personal involvement in the alleged First Amendment retaliation claim, *see Cusamano*, 691 F. Supp. at 321 (finding in a First Amendment retaliation claim that "in light of the allegation that [the parole officer] identified [the defendant] as the individual responsible for ordering [the] plaintiff's enrollment in a drug treatment program, [the] plaintiff pleads sufficient facts to establish [the] defendant['s] . . . personal involvement"). In addition, in light of Plaintiff's allegation that Gaynor became his new parole officer in June of 2015, at the time his reporting requirements changed, the allegations support an inference that Gaynor helped to enforce the alleged constitutional violation.[7] *See Smith*, 510 F. App'x at 17 (finding that the plaintiff's allegation that the defendant "was the guard who actually removed him from his cell," although the defendant did not order the plaintiff's transfer or placement in a special housing unit, was sufficient to show the defendant's personal involvement in the alleged retaliation). Plaintiff's allegations are therefore sufficient to show Annucci's and Gaynor's personal involvement in the

---

[7] As stated above, Plaintiff has sufficiently alleged that Gaynor was aware of his protected activity by alleging that Gaynor commented that if Plaintiff "decided to report future denials to their superiors in the Central Office," he would not "hear or even consider future travel requests." (FAC 4.) Gaynor and Joseph told Plaintiff that "future complaints filed against them . . . will ultimately result in further denials concerning travel requests." (*Id*. at 4–5.)

alleged deprivation of Plaintiff's First Amendment rights.[8]

### e. Qualified immunity

Defendants argue that they are entitled to qualified immunity from any claim for damages because Plaintiff fails to state a claim that Defendants violated any of his constitutional rights. (Reply 5.)

"Qualified immunity protects officers from suit so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) ("Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007))).

Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in litigation.'" *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231–32 (2009)). "[U]sually, the

---

[8] However, the Court declines to address Plaintiff's claims against Joseph, Thompson, Wilkerson, and John Doe. The Court previously instructed Plaintiff that "to the extent Plaintiff seeks to add any additional claims, he must first seek Defendants' consent or file a motion for leave to amend because he has already exhausted his one chance to do so as a matter of course." *Trisvan*, 284 F. Supp. at 304 (citing Fed. R. Civ. P. 15(a)(2)). Plaintiff neither sought Defendants' consent nor moved the Court for leave to amend but added Defendants Joseph, Thompson, Wilkerson, and John Doe. Nevertheless, because Plaintiff's only surviving claim is his First Amendment retaliation claim and Plaintiff does not allege the involvement of these Defendants with regard to his grievance or reporting requirements, Plaintiff fails to state a claim as to these Defendants.

defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion" to dismiss, but "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if 'the facts supporting the defense appear on the face of the complaint.'" *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004)). As a result, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* (quoting *McKenna*, 386 F.3d at 436).

While Defendants argue that "it would have been objectively reasonable for Defendants to believe that the imposition of the special conditions based upon Plaintiff's crime of conviction was reasonable and lawful because they were reasonably and necessarily related to the State's interest in monitoring Plaintiff and preventing any further criminal activity," (Reply 5), Defendants do not address Plaintiff's constitutional right to file grievances without suffering retaliation, s*ee McCloud v. Kane*, 491 F. Supp. 2d 312, 319 (E.D.N.Y. 2007) (finding that because the defendant failed to "meaningfully address . . . the right to file grievances about the defendant's conduct without being subject to retaliation . . . the defendant did not succeed in establishing that this right was not clearly established at the time she imposed the curfew on the plaintiff, or that it was objectively reasonable for her to believe that imposing a curfew on the plaintiff because he complained about her conduct did not violate the law"); s*ee also Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 342–43 (S.D.N.Y. 2015) (finding that the officers were not entitled to qualified immunity as to the inmate's First Amendment retaliation claim because "if [the inmate] succeeds in demonstrating that retaliation occurred, the right imperiled by officers at Greenhaven — the right to speak out without fear of reprimand — was well-ingrained at the time

of the disputed conduct").

Accordingly, because the issue was not raised by Defendants, the Court declines to consider whether Annucci and Gaynor are entitled to qualified immunity for Plaintiff's First Amendment retaliation claim.

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. The Court denies the motion as to Plaintiff's First Amendment retaliation claim against Annucci and Gaynor. The Court grants the motion as to all other remaining claims and dismisses those claims without leave to amend.

Dated: May 30, 2019
      Brooklyn, New York

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge