UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

JOHN TRISVAN,

                     Plaintiff,

             v.

ANTHONY ANNUCCI, *Acting Commissioner of New York State Division of Parole*, LETRICIA McCLEARY, *Senior Parole Officer, Brooklyn Area Office*, ANNE GOULD, *Parole Officer, Brooklyn Area Office*, YVONNE KING, *Parole Officer, Brooklyn Area Office*, ANDREA EVANS, *Former Chair Board of Parole (2009–2013)*, TINA STANFORD, *Present Chair Board of Parole (2013–Present)*, VIKKY URENA, *Parole Officer, Brooklyn Area Office*, PAROLE OFFICER IVY GAYNOR, HAL WILKERSON, *Special Parole Officer*, NIGEL JOSEPH, *Regional Director (formerly Bureau Chief)*, and AUDREY THOMPSON, *Reentry Manager (formerly Senior Parole Officer)*,

                     Defendants.

**MEMORANDUM & ORDER**
14-CV-6016 (MKB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff John Trisvan, proceeding *pro se*, commenced the above-captioned action on October 14, 2014, against Defendants Anthony Annucci, Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"),[1] Senior Parole Officer Letricia McCleary, and Parole Officers Anne Gould and Yvonne King of the "Brooklyn Area Office," challenging the conditions of his parole and seeking relief pursuant to 42 U.S.C.

---

[1] Since the commencement of this action, the Department of Correctional Services and Department of Parole have merged to form a new agency, DOCCS.  (*See* Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss 1 n.1, Docket Entry No. 113.)

§ 1983. (Compl. 1, Docket Entry No. 1.) Plaintiff subsequently amended the complaint four times, adding new claims and defendants, including a First Amendment retaliation claim against Defendants Parole Officer Ivy Gaynor and Acting Commissioner Annucci — Plaintiff's sole remaining claim. (*See* Fourth Am. Compl. ("FAC") 4, Docket Entry No. 81; Mem. and Order dated May 30, 2019, at 19, Docket Entry No. 118 (dismissing Plaintiff's other claims against all defendants without leave to amend).) Defendants Gaynor and Annucci now move for summary judgment on Plaintiff's First Amendment retaliation claim against them pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Plaintiff opposes the motion.[2]

For the reasons set forth below, the Court grants Defendants' motion.

## I.   Background

The following facts are undisputed unless otherwise noted.[3]

---

[2] (Defs.' Mot. for Summ. J., Docket Entry No. 142; Defs.' Mem. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem."), Docket Entry No. 145; Defs.' Reply in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Reply"), Docket Entry No. 147; Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n"), Docket Entry No. 141; *see also* Decl. of Julinda Dawkins ("Dawkins Decl."), Docket Entry No. 146; DOCCS Chrono Parolee Reports, annexed to Dawkins Decl. as Ex. A, Docket Entry No. 146-1; Declaration of Steven Claudio ("Claudio Decl."), annexed to Dawkins Decl. as Ex. D, Docket Entry No. 146-5; Declaration of Nigel Joseph ("Joseph Decl."), annexed to Dawkins Decl. as Ex. E, Docket Entry No. 146-6; Declaration of Rabiah Gaynor ("Gaynor Decl."), annexed to Dawkins Decl. as Ex. F, Docket Entry No. 146-7.)

[3] The Court draws the following facts from Defendant's statement of undisputed facts. (Defs.' Stmt. of Undisputed Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1"), Docket Entry No. 144.) Pursuant to Local Civil Rule 56.2, Defendants served Plaintiff with separate notice of their motion for summary judgment, (Defs.' Notice Pursuant to Local R. 56.2, Docket Entry No. 143), but Plaintiff failed to submit a response to Defendants' Statement of Material Facts Pursuant to Local Rule 56.1. A "district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," *McLean v. Metro. Jewish Geriatric Ctr.*, No. 11-CV-3065, 2013 WL 5744467, at *1 (E.D.N.Y. Oct. 23, 2013) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)), and the Court exercises its discretion and overlooks Plaintiff's failure to comply with the local rules. In addition, in light of Plaintiff's *pro se* status, the Court will "deem admitted only those facts that are supported by the record and not controverted by other admissible evidence." *Hill v. Laird*, No. 06-CV-126, 2016 WL 3248332, at *4 (E.D.N.Y. June 12, 2016) (citing *McLean*, 2013 WL 5744467, at *1).

a. **Plaintiff's release to parole**

Plaintiff is a parolee under the supervision of DOCCS.  (Def.'s 56.1 ¶ 1.)  He was released to parole supervision on September 27, 2011.  (*Id.* ¶ 2.)  Plaintiff was diagnosed with a schizoaffective disorder, which is a combination of a psychotic disorder and a mood disorder, and had a Mental Health Level designation of 1SY, signifying a severe mental health issue.  (*Id.* ¶¶ 3–4.)

In March of 2015, parole officer ("PO") Vikky Urena supervised Plaintiff.  (*Id.* ¶ 5.)  PO Urena was conducting off-site group meetings and office reports for approximately twenty to forty parolees.  (*Id.* ¶ 6.)  On March 31, 2015, Senior Parole Officer ("SPO") Audrey Thompson determined that Plaintiff was not a suitable candidate for group reporting after learning of his mental health condition and his noncompliance with his mental health treatment, which involved missing appointments with his psychotherapist.  (*Id.* ¶¶ 7–8.)

On April 15, 2015, Bureau Chief Nigel Joseph modified Plaintiff's COMPAS (Correctional Offender Management Profiling for Alternative Sanctions) Supervision Status level from a Level 3 to a Level 1, the most intensive level of supervision, after an email request from SPO Hal Wilkerson.[4]  (*Id.* ¶ 9.)

---

[4] There are four different Supervision Status levels.  (Defs.' 56.1 ¶ 10.)  Supervision Status Level 1 is the most intensive level of supervision and Supervision Status Level 4 is the least intensive level of supervision.  (*Id.* ¶ 11.)  Defendants maintain that Plaintiff's Supervision Status was modified "to protect the public and Plaintiff, and to promote Plaintiff's rehabilitation."  (*Id.*)  Because Plaintiff testified in his deposition that he believes his mental health was "used [as] a reason" for changing his Supervision Status and that his mental health never "hind[ered]" his "level status," the Court does not deem admitted by Plaintiff Defendants' assertion that Plaintiff's Supervision Status was changed to protect the public and Plaintiff. (Pl.'s Dep., annexed to Dawkins Decl. as Ex. C, Docket Entry Nos. 146-3–146-4, 82:11–15; 126:22–127:25.)

### b.   Plaintiff's travel request

On May 28, 2015, Plaintiff made a verbal travel request to PO Urena to go to Albany, New York, from June 1 to June 4, 2015, to visit a female friend.  (*Id.* ¶ 13.)  On June 3, 2015, Plaintiff submitted an application for his travel request and provided supporting documentation. (*Id.* ¶ 14.)  On June 15, 2015, SPO Wilkerson and PO Urena denied Plaintiff's travel request "because Plaintiff and his female friend's responses were sketchy, deceitful, and ambiguous and [because] a leisure trip to Albany appeared not to be in Plaintiff's best interest."[5]  (*Id.* ¶¶ 15–16.) Plaintiff sent a grievance to Acting Commissioner Annucci, which the Commissioner's office received on June 23, 2015 (the "June 2015 Grievance"), complaining of discrimination by Community Supervision for the Brooklyn Area Office.  (*Id.* ¶ 17; June 2015 Grievance, annexed to Claudio Decl. as Ex. A, Docket Entry No. 146-5, at 5–6 (stating that Plaintiff made a request on June 3, 2015, to PO Urena to travel to Albany, New York, and has since "repeatedly contacted" PO Urena and SPO Wilkinson who "have refused to assist [him]" and requesting "an investigation").)  The next day, on June 24, 2015, Plaintiff was advised of the denial of his travel request.  (Defs.' 56.1 ¶ 18.)

### c.   Plaintiff's transfer

On June 30, 2015, Bureau Chief Joseph decided to transfer Plaintiff to another PO due to the change in Plaintiff's Supervision Status to a Level 1 to provide Plaintiff with intensive supervision to better address his mental health needs and in the interest of public safety.  (*Id.*

---

[5]  Plaintiff testified that when PO Urena and SPO Wilkerson denied his travel request, "they said something about things being vague and inconsistent.  There was nothing like that. . . . [T]here was no vagueness in it."  (Pl.'s Dep. 172:11–14.)  Plaintiff also testified that he was told that the denial of his travel request "had something to do with [his] mental health."  (*Id.* at 177:25–178:6.)  Accordingly, the Court does not deem admitted by Plaintiff the reason for the denial of his travel request.

4

¶ 19.)  On July 2, 2015, Plaintiff again verbally requested permission to travel to Albany to visit colleges.  (*Id.* ¶ 20.)  On July 2 and 6, 2015, SPO Wilkerson and PO Urena denied Plaintiff's second travel request because he lacked acceptance into the colleges he was seeking to visit and verification that he had the financial means to pay for tuition.  (*Id.* ¶ 21.)

On July 9, 2015, Plaintiff's case was transferred to PO Gaynor for supervision.  (*Id.* ¶ 22.)  PO Gaynor handled the mental health caseload in the Brooklyn Area Office and had a lower number of parolees under her supervision because her caseload was specialized.  (*Id.* ¶¶ 23–24.)  On July 29, 2015, Assistant Commissioner Steven A. Claudio responded to Plaintiff's June 2015 Grievance on behalf of Acting Commissioner Annucci, acknowledging receipt of the letter and upholding the findings of Bureau Chief Joseph that there were no retaliatory acts against Plaintiff or discrimination of any kind by any staff member in the Brooklyn Area Office ("Response to June 2015 Grievance").  (*Id.* ¶ 25; Response to June 2015 Grievance, annexed to Claudio Decl. as Ex. B, Docket Entry No. 146-5, at 8–9.)  PO Gaynor ceased being Plaintiff's PO in June of 2016.  (FAC ¶ 26.)

### d.   Defendants' involvement in changing Plaintiff's Supervision Status level

The Bureau Chief is responsible for modifying parolees' Supervision Status levels.  (*Id.* ¶ 30.)  Thus, as a PO, PO Gaynor did not have the authority to change Plaintiff's Supervision Status level.  (*Id.* ¶ 29.)  In addition, PO Gaynor did not become Plaintiff's PO until July 9, 2015, after Plaintiff's Supervision Status level had already been changed and after Plaintiff sent the June 2015 Grievance to Acting Commissioner Annucci.  (*Id.* ¶¶ 28, 31.)  Acting Commissioner Annucci did not see the June 2015 Grievance or instruct Assistant Commissioner Claudio on what to say in his response to the June 2015 Grievance.  (*Id.* ¶¶ 32–33.)

## II.   Discussion

### a.   Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Windward Bora, LLC v. Wilmington Sav. Fund Soc'y*, 982 F.3d 139, 142 (2d Cir. 2020); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018).  The court must "constru[e] the evidence in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b.   First Amendment retaliation claim

Defendants argue that they are entitled to summary judgment on Plaintiff's First Amendment retaliation claim because "the alleged protected conduct, the filing of a grievance,

has no causal connection to the alleged adverse action, the changing of Plaintiff's Supervision

Status level." (Defs.' Mem. 5.)  In support, Defendants argue that the evidence demonstrates that

the change in Plaintiff's Supervision Status "was based on Plaintiff's mental health condition and

the need for more intensive supervision than Plaintiff had been receiving," and it occurred on

April 15, 2015, "at least [two] months *before* Plaintiff sent [the] grievance" upon which his

retaliation claim is based. (*Id.* at 5–6.)  In addition, Defendants argue that even if Plaintiff's

inference were correct — that because he was still reporting to PO Urena on April 15, 2015, his

Level 3 Status must still have been in place — Plaintiff fails to rebut the evidence establishing

that "the change in status was already decided and in motion well before Plaintiff's June 2015

[G]rievance" and that "the change was due to Plaintiff's mental health condition." (Def.'s Reply

2.)

Plaintiff argues that that no change in his Supervision Status occurred until after he had

made numerous travel requests and the June 2015 Grievance was forwarded to DOCCS, at which

time he was "placed on Level One status and [his] case was placed in Defendant Gaynor's

caseload." (Pl.'s Opp'n 6.)  In support, Plaintiff argues that he could not have been "stripped of

his Level [T]hree status and privileges on April 15, 2015," because he was "still on [the] active

caseload of a Level Three [PO] supervisor and was still reporting in a Level Three clearance

[building] at that time." (*Id.*)  In addition, Plaintiff argues that there is no evidence to support

Defendants' claim that the reason they changed his Supervision Status was to better address his

mental health needs and to serve the interest of public safety. (*Id.*)

To prevail on a First Amendment retaliation claim, a plaintiff must show that: "(1) his

speech or conduct was protected by the First Amendment; (2) the defendant took adverse action

against him; and (3) there was a causal connection between this adverse action and the protected

7

speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *see also Eyshinskiy v. Kendall*, 692 F. App'x 677, 677–78 (2d Cir. 2017); *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013); *Maco v. Baldwin Union Free Sch. Dist.*, 249 F. Supp. 3d 674, 678 (E.D.N.Y. 2017) ("'Private citizens alleging retaliation for their criticism of public officials' are generally required to show that 'they engaged in protected speech, persons acting under color of state law took adverse action against them in retaliation for that speech, and the retaliation resulted in actual chilling of their exercise of their constitutional right to free speech.'" (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 430 (S.D.N.Y. 2013))), *aff'd*, 726 F. App'x 37 (2d Cir. 2018); *see Muhammad v. Jenkins*, No. 12-CV-8525, 2013 WL 5225573, at *11 (S.D.N.Y. Sept. 13, 2013) (applying standard to parolee). "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Wahl v. County of Suffolk*, 466 F. App'x 17, 19 (2d Cir. 2012) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).

The evidence before the Court demonstrates that the change in Plaintiff's Supervision Status occurred on April 15, 2015, more than two months before Plaintiff filed the June 2015 Grievance. (Joseph Decl. ¶¶ 5, 12 (stating that Plaintiff's Supervision Status was changed from Level 3 to Level 1 on April 15, 2015, after an email request from SPO Wilkerson); DOCCS Chrono Parolee Reports 41 (April 15, 2015 report entered by SPO Wilkerson noting that "a request was made to modify [Plaintiff's] COMPAS supervision status level to level '1'"); June 2015 Grievance 4 (bearing stamp reflecting DOCCS's receipt of June 2015 Grievance on June 23, 2015); Claudio Decl. ¶ 4 (stating that Commissioner's office received June 2015 Grievance on June 23, 2015)). Because the alleged adverse action occurred *before* the alleged protected

8

activity, and because no genuine issue of material fact exists with respect to the timing of these events, Plaintiff cannot establish a causal connection between the protected conduct and the alleged adverse action, and the Court therefore grants Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claim.[6]  *See McAllister v. Queens Borough Pub. Library*, 309 F. App'x 457, 459 (2d Cir. 2009) ("The plaintiff] failed to state a claim for retaliation because the only adverse employment action by his employer that [he] alleges is his termination, which occurred before his protected activity, filing a charge with the administrative agency."); *see also, e.g.*, *Elder v. Silva*, No. 16-CV-1925, 2021 WL 1102996, at *10 (E.D. Cal. Mar. 23, 2021) ("[T]he only alleged protected activity — the filing of a grievance against [the defendant] — occurred after [the plaintiff's] property was destroyed.  Absent [the plaintiff] engaging in some protected activity prior to an adverse action, . . . [the plaintiff] cannot establish that [the defendant's] conduct was motivated by the protected activity.  As such, [the plaintiff] cannot establish an essential element of his retaliation claim . . . ."); *Hassan v. City of Ithaca*, No. 11-CV-6535, 2015 WL 5943492, at *14 (W.D.N.Y. Oct. 13, 2015) (granting the defendants' summary judgment motion where "the alleged protected activity occurred after the adverse action, and therefore cannot be a 'but for' cause of the adverse action").  Although Plaintiff argues that his Supervision Status could not have been changed on April 15, 2015, because he was "still on [the] active caseload of a Level Three [PO] supervisor and was still reporting in a Level Three clearance [building] at that time," the evidence in the record demonstrates that while his Supervision Status was changed on April 15, 2015, he was "still on a level 3 caseload" for some time, and Plaintiff has failed to rebut this evidence.  *See* DOCCS Chrono Parolee Reports

---

[6]  In view of the Court's finding, the Court does not address Defendants' arguments in the alternative that they (1) were not directly involved in the decision to change Plaintiff's Supervision Status and (2) are entitled to qualified immunity.

41 (May 4, 2015 report by SPO Wilkerson noting that Plaintiff's "case was level 3 and changed to level 1 due to mental health issues" but was "still on level 3 caseload").  Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claim.

### III.  Conclusion

For the reasons stated above, the Court grants Defendants' summary judgment motion. The Clerk of Court is directed to mail a copy of this Memorandum and Order to Plaintiff at the address of record and close this case.

Dated: August 24, 2021
        Brooklyn, New York

SO ORDERED:

s/ MKB

_____
MARGO K. BRODIE
United States District Judge